UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VERNON TURMAN,

Plaintiff,

v.

PAUL JENSEN et al.,

Defendants.

Case No. 1:26-cv-1918

Honorable Sally J. Berens

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.19.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below. The Court will also deny Plaintiff's motion to appoint counsel. (Am. Compl., ECF No. 10-1, PageID.50–51.)

## <u>Discussion</u>

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues the following LRF staff in their personal and official capacities: Security Threat Group (STG) Inspector Paul Jensen, Prison

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Counselor Tanya Douglass, Resident Unit Manager Unknown Boykins, Inspector Unknown Page, Corrections Officer Unknown Martinez, Sergeant Unknown Clark, Corrections Officer Unknown Buchannon, Corrections Officer Unknown Ferguson, Corrections Officer Unknown Wilfong, and Corrections Officer Unknown Mitchell.

Plaintiff alleges that, on December 8, 2024, Defendant Wilfong poured coffee on Plaintiff's tablet and broke it. (Compl., ECF No. 1, PageID.8.) The following day, on December 9, 2024, Plaintiff was taken to segregation. (*Id.*, PageID.5.) Shortly thereafter, Defendant Jensen summoned Plaintiff to his office, where he accused Plaintiff of lying in grievances and paying to have Defendant Wilfong assaulted on December 7, 2024. (*Id.*) Defendant Jensen "vowed retribution starting with an unwarranted STG 2 designation and transferring [Plaintiff] to a facility further away from [Plaintiff's] family." (*Id.*, PageID.5, 10.) Defendant Jensen falsely labeled Plaintiff as an "enforcer for all bloodsets" to support an enhanced misconduct. (*Id.*, PageID.5.)

At the time that Plaintiff was transferred to segregation on December 9, 2024, Defendants Clark and Martinez confiscated items of Plaintiff's personal property. (*Id.*, PageID.7.) When non-party Lieutenant Streit later went to retrieve Plaintiff's legal paperwork, he told Plaintiff, "your seg property is trashed. It literally looks like a pile of trash. Packing officers are responsible for this." (*Id.*, PageID.8.) Plaintiff asked for a hearing with a neutral party concerning the confiscation of his property; however, Defendant Clark conducted the hearing. (*Id.*, PageID.8.)

Plaintiff did not receive a misconduct report within seven days of his transfer to segregation as required by MDOC policy. (*Id.*, PageID.5.) However, Defendant Jensen did not release Plaintiff from segregation. (*Id.*) Instead, Defendant Jensen placed Plaintiff on involuntary protective custody, which Plaintiff contends was not warranted. (*Id.*) Defendants Douglass, Boykins, Page,

and non-party staff members failed to act in response to Defendant Jensen's actions in placing Plaintiff in protective custody. (*Id.*, PageID.5–6.)

Plaintiff claims he was held in segregation for approximately 30 days for a staff assault with which he had no personal involvement. (*Id.*, PageID.6.) For 18 of those days, Plaintiff was held in a cell with an inoperable sink, meaning that he could not drink water from it. (*Id.*) Plaintiff informed Defendants Douglass, Page, and Boykins of the issue with his sink, but they each told Plaintiff that it was an issue between Plaintiff and Defendant Jensen. (*Id.*, PageID.7.) Defendants Jensen and Mitchell were also aware that Plaintiff did not have access to drinking water in his cell. (Am. Compl., ECF No. 10-1, PageID.49.)

On December 11, 2024, Defendant Mitchell forced Plaintiff "to rec yard in open toe shower shoes while it was raining right after it snowed." (Compl., ECF No. 1, PageID.8; Am. Compl., ECF No. 10-1, PageID.49.)

On December 12, 2024, Plaintiff was examined by medical personnel because Plaintiff had not eaten in four days "out of fear." (Compl., ECF No. 1, PageID.10.) Plaintiff's vital signs were "okay," but the examiner noted that Plaintiff's tongue appeared abnormal and asked whether Plaintiff was drinking water. (*Id.*) The examiner instructed Defendant Mitchell to give Plaintiff a cup of water. (*Id.*; Am. Compl., ECF No. 10-1, PageID.49.)

On December 15, 2024, Plaintiff spoke with Defendant Ferguson about his inoperable sink. (Compl., ECF No. 1, PageID.7.) Defendant Ferguson stated, "You complained of this the other day and Jenson told us not to move you, take that up with him." (*Id.*) Two days later, Plaintiff informed Defendant Clark that he was unable to drink from his sink. (*Id.*) Defendant Clark told Plaintiff to drink from the toilet. (*Id.*)

On December 27, 2024, Defendant Buchannon threatened to assault Plaintiff physically. (*Id.*, PageID.8.) That same day, Plaintiff was placed in a new segregation cell with a working sink. (*Id.*, PageID.9.)

Based on the foregoing allegations, Plaintiff brings the following itemized claims: "Claim #1 Falsifying Documents" (*id.*, PageID.5), "Claim #2 Unlawful Imprisonment" (*id.*), "Claim #3 Cruel and Unusual Punishment" (*id.*, PageID.6), "Claim #4 Violation of Due Process" (*id.*, PageID.7), and "Claim #5 Retaliation" (*id.*, PageID.8). Plaintiff seeks injunctive and monetary relief. (*Id.*, PageID.19.).

## II. Motion for Leave to File an Amended Complaint

On April 3, 2026, the Court received a letter from Plaintiff seeking leave to filed an amended complaint, as well as a proposed amendment, containing additional factual allegations against Defendant Mitchell. (ECF No. 10; Am. Compl., ECF No. 10-1.)

Federal Rule of Civil Procedure 15(a)(1), governing the amendment of pleadings, provides:

> [a] party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or
>
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(1). Although an amended pleading typically supersedes the original pleading, if the party submitting the amendment clearly intended the latter pleading to supplement, rather than supersede, the original pleading, the two can be read together. *Clark v. Johnston*, 413 F. App'x 804, 811–12 (6th Cir. 2011).

Here, in deference to Petitioner's *pro se* status and in the interest of justice, the Court will grant Plaintiff's motion for leave to file an amended complaint (ECF No. 10) and consider the proposed amended complaint (ECF No. 10-1) together with the original complaint (ECF No. 1) as the operative pleading in this case.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Official Capacity Claims**

Plaintiff sues Defendants in their personal and official capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff seeks monetary damages. However, as noted above, the MDOC is not a "person" who may be sued under section 1983 for money damages. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We

hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). Therefore, the Court will dismiss Plaintiff's official capacity claims for money damages.

Plaintiff also seeks injunctive relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Importantly, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at LRF, which is where he avers that Defendants are employed. Because Plaintiff is no longer at LRF, he cannot maintain his claims for injunctive relief against Defendants in their official capacities.

For all the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities. Therefore, Plaintiff's official capacity claims will be dismissed.

### B. Personal Capacity Claims

#### 1. Claim #1 Falsifying Documents

Plaintiff alleges that Defendant Jensen falsified documents to enhance Plaintiff's misconduct charges, resulting in Plaintiff's placement in segregation and being designated as "STG 2." (Compl., ECF No. 1, PageID.5.) The Court will liberally construe these allegations as raising claims for violation of Plaintiff's Fourteenth Amendment right to procedural due process.

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Nonetheless, Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The allegations of Plaintiff's complaint do not plausibly suggest that Plaintiff's misconduct charges affected any interests that would fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship.

A prisoner like Plaintiff, who is serving an indeterminate sentence for offenses committed after 2000,[2] can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich.

[2] Plaintiff is incarcerated for offenses committed in 2009. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=83424 (last visited Aug. 6, 2026).

Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). The Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence in the sense contemplated by *Sandin*. *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).

Plaintiff has also not alleged facts that would plausibly suggest that he suffered a "significant and atypical deprivation" as a result of the enhanced misconduct charge that resulted in Plaintiff's placement in segregation during the month of December. The Supreme Court has held that even placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Therefore, Plaintiff's due process claim concerning his placement in segregation is foreclosed by *Sandin*, and the Court will dismiss Plaintiff's Fourteenth Amendment procedural due process claims for failure to state a claim.

Plaintiff also does not have a protected interest in his designation as an "STG 2." An STG is defined under MDOC policy as "a group of prisoners designated by the Director as possessing common characteristics that distinguish them from other prisoners or groups of prisoners and that,

as an entity, pose a threat to staff or other prisoners or to the custody, safety and security of the facility." Mich. Dep't of Corr., Policy Directive 04.04.113(B) (eff. Sept. 18, 2023). A prisoner may be designated an "STG II" if: (1) he is an STG I member and is found guilty of major misconduct related to his STG activity, (2) was previously an STG I member, and currently presents a threat to prisoners or staff due to STG activities, or (3) is identified as a leader, enforcer, or recruiter in an STG. Mich. Dep't of Corr., Policy Directive 04.04.113(W). A prisoner designated as an STG II member must be housed in security level IV or higher. Mich. Dep't of Corr., Policy Directive 04.04.113(Z). STG II members are also subject to the following restrictions: prisoners are generally limited to two non-contact visits per month (the limit does not apply to counsel or clergy); classification to a school or work assignment only as approved by the EMS manager; no attendance at group meetings of prisoners, except for approved religious services; no participation in group leisure time activities, except for yard/dayroom; cell search at least once per week; out-of-cell movement not to exceed one hour per day, excluding showers, meals, work, etc. Mich. Dep't of Corr., Policy Directive 04.04.113(CC).

Plaintiff does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraints do not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486. Moreover, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 224. Relying on *Sandin,* the Sixth Circuit has held that a Michigan prisoner can no longer claim a liberty interest in his security classification. *See Harbin-Bey v. Rutter,* 420 F.3d, 571 577 (6th Cir. 2005); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995); *accord*

*Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997). Plaintiff's designation as a STG member is nothing more than a security classification used by the prison. *Harbin Bey*, 420 F.3d at 577. Because Plaintiff does not have a liberty interest in a particular security level or classification, he fails to state a due process claim on this basis as well.

**2. Claim #2 Unlawful Imprisonment**

In Claim #2, Plaintiff alleges that he was unlawfully imprisoned in segregation. (Compl., ECF No. 1, PageID.5.) Specifically, Plaintiff claims that MDOC policy required that Defendant Jensen release Plaintiff from segregation within seven (7) business days because Plaintiff did not receive a misconduct report, but that Defendant Jensen instead placed Plaintiff on protective custody because he did not want to release Plaintiff. (*Id.*)

To the extent that Plaintiff's claim may be construed as a claim for violation of MDOC policy, Plaintiff's assertions fail to state a constitutional claim. Claims under section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Accordingly, any section 1983 claims premised upon violations of MDOC policy and procedure will be dismissed.

To the extent that Plaintiff seeks to bring an Eighth Amendment claim related to his placement in segregation, this claim will also be dismissed. Placement in segregation is a routine

discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges because of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey*, 524 F.3d at 795. Thus, the Court finds that Plaintiff fails to state a claim under the Eighth Amendment based upon his placement in segregation.

Plaintiff's reference to "unlawful imprisonment" may be an attempt to bring a Michigan state law claim. In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc*., 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Because Plaintiff continues to have a pending federal claim against Defendant Jensen, the Court will exercise supplemental jurisdiction over Plaintiff's state law claim against Defendant Jensen. However, because the Court will dismiss Defendants Douglass, Boykins, Page, Wilfong, Clark, Martinez, Buchannon, Ferguson, and Mitchell, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against those Defendants.

**3. Claim #3 Cruel and Unusual Punishment**

Plaintiff alleges that, for 18 days, he was held in a cell without a functioning sink from which to drink water. (Compl., ECF No. 1, PageID.6.) He claims that Defendants Douglass, Page, Jensen, Boykins, Ferguson, and Clark were aware of this issue for at least two weeks but did not correct the problem. (*Id.*, PageID.6–7.) Plaintiff also claims that Defendant Mitchell forced Plaintiff "to rec yard in open toe shower shoes while it was raining right after it snowed" (*id.*,

PageID.8; Am. Compl., ECF No. 10-1, PageID.49), and that Defendant Buchannon threatened to physically assault Plaintiff (Compl., ECF No. 1, PageID.8). The Court will construe these allegations as raising Eighth Amendment claims of cruel and unusual punishment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993)

(applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

**a. Lack of Working Sink**

Plaintiff alleges that he was denied access to a working sink within his cell for 18 days. While it is true that denying a prisoner access to drinking water can rise to the level of an Eighth Amendment violation, *Barker v. Goodrich*, 649 F.3d 428 (6th Cir. 2011), Plaintiff does not allege that he was denied all access to drinking water. Courts have held that even the denial of all running water within a cell for a similar period constituted only a temporary inconvenience that did not rise to the level of an Eighth Amendment violation. *See e.g.*, *Taper v. Branch*, No. 1:23-CV-806, 2024 WL 2862527, at *9 (S.D. Ohio June 6, 2024), *report and recommendation adopted,* No. 1:23-CV-806, 2024 WL 3163916 (S.D. Ohio June 24, 2024) (dismissing Plaintiff's Eighth Amendment claims for failure to state a claim where the plaintiff alleged that he was housed in a condemned cell with black mold, roaches, rats, and no running water for 16 days); *Wiley v. Kentucky Dep't of Corr.*, No. CIV.A. 11-97-HRW, 2012 WL 5878678, at *4 (E.D. Ky. Nov. 21, 2012) (holding that the plaintiff's two-week confinement in a "dry cell" with no running water, no

clean clothes, linens, or personal property, and in cold temperatures did not rise to an Eighth Amendment violation).

Here, Plaintiff does not allege that he was deprived of drinking water, only that he was deprived of immediately accessible potable water within his cell. Plaintiff does not claim that he was being denied water with his meals or upon request, let alone that any Defendant was personally aware that Plaintiff faced a substantial risk of serious harm because he was being denied all access to drinking water. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims concerning his inoperable sink.

**b. Shower Shoes in Recreation Yard**

Plaintiff alleges that, on one occasion, Defendant Mitchell forced Plaintiff to go outside in his shower shoes in cold, wet weather. (Compl., ECF No. 1, PageID.8; Am. Compl., ECF No. 10-1, PageID.49.)

A failure to provide adequate clothing to inmates may, under certain circumstances, constitute an Eighth Amendment violation. *See Smith v. Bush*, No. 23-1644, 2024 WL 242349, at *2 (6th Cir. Jan. 19, 2024). As with any Eighth Amendment conditions of confinement claim, when determining whether exposure to cold temperatures satisfies the objective component, the Court must consider the duration of the exposure and totality of the conditions. *See Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration."). "Mere discomfort or temporary exposure to cold weather is not enough to invoke the protections of the Eighth Amendment." *Young v. Hall*, No. 2:19-cv-00050, 2020 WL 8768298, at *7 (W.D. Mich. Dec. 9, 2020), *report and recommendation adopted,* No. 2:19-cv-50, 2021 WL 508306 (W.D. Mich. Feb. 11, 2021).

Here, Plaintiff has alleged only a brief period of exposure to cold weather. He does not allege a sufficiently serious risk to his health or safety, let alone that Defendant Mitchell acted with deliberate indifference to such a risk. *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (recognizing that the objective component of the Eighth Amendment test is typically not met by temporary deprivations that result in no physical injury). Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Mitchell.

**c. Verbal Threat**

As to Plaintiff's claim that Defendant Buchannon threatened to physically assault Plaintiff, (Compl., ECF No. 1, PageID.8), the Sixth Circuit has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (noting that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief" (citing *Ivey*, 832 F.2d at 955)); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (affirming district court's conclusion that verbal harassment in the form of a threatened sexual assault "was not punishment that violated Miller's constitutional rights" (citing *Ivey*, 832 F.2d at 955)); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree.").

In *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020), the Sixth Circuit addressed, as a matter of first impression, whether "unprovoked and repeated threats to a prisoner's life, combined with a

demonstrated means to immediately carry out such threats, constitute conduct so objectively serious as to" violate the Eighth Amendment. In *Small*, the plaintiff alleged that the officer had "brandished a knife, threatened to kill Small, and motioned in a manner suggesting how [he] would use the knife to kill Small." *Id.* at 540. The Sixth Circuit held that an inmate sets forth a plausible Eighth Amendment claim when repeated verbal threats to the inmate's life were combined with "concrete steps, such as aggressively brandishing a deadly weapon, to make those threats credible." *Id.* at 541 (citing cases for the proposition that "'objectively credible' death threats that cause a prisoner to fear for his life violate the Eighth Amendment").

Here, however, Plaintiff has alleged only a single, vague threat of physical assault. Plaintiff has not set forth any facts suggesting that Defendant Buchannon threatened Plaintiff's life, that his threat was repeated, or that his threat was combined with concrete steps to make it credible. Accordingly, Plaintiff's allegation against Defendant Buchannon does not rise to the level of the threats at issue in *Small*. The Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Buchannon.

**4. Claim #4 Violation of Due Process**

Aside from Plaintiff's claims concerning his placement in segregation and designation as "STG 2," addressed above, Plaintiff also brings due process claims concerning the confiscation and destruction of his personal property. (Compl., ECF No. 1, PageID.7–8.) Any such claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent

and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his section 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

The Court notes that numerous state post-deprivation remedies are available to Plaintiff. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Nov. 13, 2023). Second, aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective May 20, 2024). And third, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.

Here, Plaintiff does not claim that his state post-deprivation remedies are inadequate. Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment claim concerning the confiscation and destruction of his personal property

**5. Claim #5 Retaliation**

Finally, Plaintiff brings claims of "retaliation." Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was

taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

**a. Defendants Wilfong, Martinez, Clark, Buchannon, and Mitchell**

Plaintiff alleges that the following claims "fall under the umbrella of retaliation as they were done with malicious intent due to [Plaintiff] being accused of being involved in a staff assault:" Defendant Wilfong spilled coffee on Plaintiff's tablet, breaking it; Defendants Martinez and Clark destroyed Plaintiff's property; Defendant Buchannon threatened to physically assault Plaintiff; and Defendant Mitchell forced Plaintiff into the recreation yard with only shower shoes. (Compl., ECF No. 1, PageID.8; Am. Compl., ECF No. 10-1, PageID.49.) Plaintiff's retaliation claims against these Defendants fail at the first step because he has not alleged that he engaged in any protected activity.

"The First Amendment does not protect violence." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982). As the Sixth Circuit explained in *Thaddeus–X*, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one" of the three-step retaliation analysis. *Thaddeus-X*, 175 F.3d at 395; *see Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that insolence is not protected conduct for First Amendment purposes). "Assault and Battery" and "Threatening Behavior," including attempted assault and battery, are legitimate Class I misconduct violations under MDOC policy. MDOC Policy Directive 03.03.105, Attach. A (eff. Aug. 26, 2024). Attempting to have prison staff assaulted cannot be considered protected activity under the First Amendment—or any other

amendment. Therefore, the Court will dismiss Plaintiff's First Amendment claims against Defendants Wilfong, Martinez, Clark, Buchannon, and Mitchell.

**b. Defendant Jensen**

Plaintiff alleges that Defendant Jensen placed Plaintiff in segregation and issued Plaintiff a falsely enhanced misconduct charge on December 9, 2024, for "lying in grievances" and paying to have Defendant Wilfong assaulted. (Compl., ECF No. 1, PageID.5.) As discussed above, paying to have prison staff assaulted is not First Amendment protected activity. Therefore, any claim alleging that Defendant Jensen was motivated by Plaintiff's actions in paying to have Defendant Wilfong assaulted will be dismissed.

As to Plaintiff's claim that Defendant Jensen was also motivated by Plaintiff's "lying in grievances, the Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). However, "'[a]busive or manipulative use of a grievance system [is] not . . . protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara,* 680 F.3d 686, 699 (6th Cir. 2012)).

At this stage of the proceedings, liberally construing Plaintiff's complaint, the Court will presume that Plaintiff does not concede that he lied in his prior grievances. Therefore, the Court will assume without deciding that Plaintiff engaged in protected activity and will allow Plaintiff to proceed with his First Amendment retaliation claims against Defendant Jensen premised upon Plaintiff's previously filed grievances.

## IV. Motion to Appoint Counsel

In his amendment to his complaint, Plaintiff asks this Court to appoint counsel, citing his inexperience with the law, potential for transfer to a new location, and inability to contact witnesses or conduct a proper investigation. (Am. Compl., ECF No. 10-1, PageID.50–51.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court will therefore deny Plaintiff's request for appointment of counsel. (Am. Compl., ECF No. 10-1, PageID.51.)

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Douglass, Boykins, Page, Wilfong, Clark, Martinez, Buchannon, Ferguson, and Mitchell will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims against these Defendants without prejudice. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Jensen: official capacity claims, First Amendment

retaliation claims premised upon Defendant Jensen's understanding that Plaintiff paid to have Defendant Wilfong assaulted, Eighth Amendment claims, and Fourteenth Amendment claims. Plaintiff's First Amendment retaliation claims against Defendant Jensen premised upon Plaintiff's previously filed grievances and supplemental state law claims remain in the case. The Court will also grant Plaintiff's motion for leave to file an amended complaint (ECF No. 10) and direct the clerk to file the proposed amendment (ECF No. 10-1) as a separate document and will deny Plaintiff's motion to appoint counsel (Am. Compl., ECF No. 10-1, PageID.50–51).

An order consistent with this opinion will be entered.

Dated: August 10, 2026

/s/ Sally J. Berens
SALLY J. BERENS
United States Magistrate Judge